### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARLENE MARSHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-14-571-D |
| ) | |
| EISAI, INC., ) | |
| ) | |
| Defendant. ) | |

### **COMPLAINT**

Plaintiff Darleen Marshall ("Plaintiff"), for her cause of action against Defendant Eisai, Inc. ("Defendant"), alleges and states:

### **The Parties**

1. At all times herein mentioned, Plaintiff was and now is a resident of City of Oklahoma City, Oklahoma County, State of Oklahoma.

2. At all relevant times herein mentioned, Defendant was and is now a domestic for-profit corporation doing business in Oklahoma, including in Oklahoma County, State of Oklahoma.

### **Jurisdiction and Venue**

3. This action arises and jurisdiction is proper under the provisions of Section 7(b) of the Age Discrimination in Employment Act (ADEA) 29 U.S.C. Section 626(b), and 28 U.S.C. §1331.

1

4. Venue is proper in the Western District of Oklahoma in that Plaintiff worked primarily in Western Oklahoma during her employment with Defendant, pursuant to U.S.C. Section 1391(c) and 29 U.S.C. Section 626(c)(1).

## **FACT ALLEGATIONS**

5. Plaintiff was born in 1947, and is 67 years old.

6. Defendant is a pharmaceutical company focused on marketing and selling of medicines related to oncology and diseases of the central nervous system.

7. Plaintiff began as a salesperson with Defendant in or around May 2010. Prior to this time, she had approximately twenty-four (24) years of experienced in pharmaceutical sales with different companies. In her first assignment, her territory consisted of much of Southwestern Oklahoma, and into Northern Texas.

8. In her first year, Plaintiff exceeded her job requirements, and was told in June 2011 that she was awarded the Nightingale Award for her excellent sales. The Nightingale is the most prestigious award Defendant reserves for the best of the best. Ultimately, she was not given the award because she had not been working for the entire year prior. She was also integral to Team Oklahoma win the Pinnacle Award in July 2011, another honor of distinction.

9. In October 2011, Plaintiff's territory was altered to include mostly Western Oklahoma, and nothing in northern Texas.

x

10.   In December 2011, Plaintiff had shoulder surgery and used Christmas leave, in addition to her own leave and leave under the Family Medical Leave Act ("FMLA"), to recover.  She returned to work in February 2012, earlier than she was supposed to, with some residual shoulder problems, but she was able to do her job successfully.

11.   Plaintiff was the only member of the local team to exceed her objective on her targets during April 2012.  Moreover, around this time in May or June 2012, Plaintiff was selected as one of twelve (12) participants to attend be part of a Capitol Hill Day in Washington D.C. for the Sales and Sales Operations Eisai PAC Advisory Council ("SEPAC").

12.   Plaintiff also had hysterectomy surgery in July 2012 and was off work from July 24, 2012, until Labor Day 2012.  Plaintiff utilized FMLA leave for this time off, as well as short-term disability.  Her sales were not as high overall over this period of time due to the fact that she was off work, but she still received a satisfactory job performance.

13.   Plaintiff returned to work in September 2012.  Around this same time, she received a letter addressed to Marzell Clayton that her medical coverage with Defendant would terminate as of October 1, 2012, even though Plaintiff's employment had not ended.

14. When she returned to work in September 2012, her sales territory was changed starting October 2012, and she was assigned a region including most of Oklahoma which also extended south to Denton and Wichita Falls, Texas. Moreover, she was asked to be on the Banzel (Neurology) drug team territory, and was the only one in the Dallas district asked to switch. She believed that the large territory and assignment of a new drug were done in order to make her quit her position, but she did not do so.

15. In October 2012, Plaintiff was tested at the home office to prepare her for sales of the Banzel drug. The testing consists of five (5) written tests and five (5) presentations, three (3) of which are graded. Although she was supposed to be assigned a trainer and given written materials to prepare at a certain time before the testing, she only received a trainer a week later than others, and she received training materials a week late.

16. After she passed the written test, Plaintiff was informed she was doing fine in non-graded oral presentations. However, before the three (3) oral graded presentations, a District or Regional Manager thought that Plaintiff had already made her presentations and told Plaintiff that she should go see Mary Meyers ("Meyers"), the head trainer at the home office in New Jersey, which was abnormal. When Plaintiff told him she had not completed the presentations, he was surprised and told her to do that first.

17. During her graded oral presentation, Plaintiff was told she flunked the first presentation, although she attempted to complete it as her trainer instructed. On her second oral presentation, she was told she did perfectly, 100%. On her third presentation, although she repeated her "perfect" performance, she was told she flunked.

18. She then met with Myers, as she was instructed prior to taking her tests, who said she was going to give Plaintiff another chance. However, Plaintiff was told that if she did not pass, she would be terminated on the spot.

19. Before Plaintiff's "second chance," she performed some practice attempts and was told she did fine by the classroom instructor and another trainer. After her graded presentations, however, she was formally judged to have flunked her two (2) additional oral presentations.

20. Plaintiff was then terminated on or around October 5, 2012.

21. Based upon information and belief, Plaintiff contends that she was the only one of those at the testing who flunked her presentations and was the only one age 65 or older.

22. Upon leaving New Jersey to return to Oklahoma, Plaintiff injured her shoulder with the luggage she was forced to carry, which was contrary to her restrictions. She would have received assistance with this task had she not been terminated. She filed a Worker's Compensation claim as a result, and it was denied.

23. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 29, 2013, and thereafter, on March 7, 2014, the EEOC issued its Dismissal and Notice of Suit Rights.

## FIRST CAUSE OF ACTION

### VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) OF 1967, AS AMENDED, 29 U.S.C. § 621, ET SEQ

24. Plaintiff incorporates by reference Paragraphs 1 through 23 as though set forth in full herein.

25. At all relevant times herein mentioned, Plaintiff was in the protected age classification.

26. By reason of Plaintiff's education, experience and job knowledge, Plaintiff at all times was qualified to perform the job duties and responsibilities of the position of sales representative.

27. Plaintiff's age was a motivating and significant factor in Defendant's decision to terminate Plaintiff's employment.

28. As a direct and proximate result of Defendant's discriminatory treatment and actions of Plaintiff as hereinabove alleged in violation of the Age Discrimination in Employment Act of 1967, as amended, Plaintiff has suffered, and is now suffering, and will continue to suffer, irreparable injury and economic loss, and Plaintiff seeks all of the relief afforded by the Age Discrimination in Employment Act of 1967, as amended.

29.     Defendant was, and is, an employer within the meaning of § 11(b) of the ADEA (29 U.S.C. § 630(b)) in that it did and now does employ more than 20 persons.

30.     Defendant's violation of the ADEA of 1967, as amended, was wilful.

31.     Defendant has no legitimate, good faith reason for Plaintiff's termination, and its purported reason that Plaintiff failed her training test is pre-textual and a sham.

32.     Plaintiff has complied with all of the administrative requirements prior to filing this action and this action has been filed within ninety (90) days from the issuance of the Equal Employment Opportunity Commission's Dismissal and Notice of Suit Rights.

WHEREFORE, Plaintiff demands and prays against Defendant as follows:

(1)     That a judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of the Age Discrimination in Employment Act of 1967, as amended;

(2)     That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADEA;

(3)     That Defendant be required to compensate Plaintiff for the full value of wages and benefits that Plaintiff would have received if it had not been for Defendant's unlawful treatment of Plaintiff, with interest thereon, from the date Plaintiff was demoted;

(4) That a final judgment in favor of Plaintiff and against Defendant be entered for liquidated damages in an amount equal to the wages due and owing Plaintiff as provided by 29 U.S.C. § 626(b) and § 216(b);

(5) That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the ADEA;

(6) That Plaintiff be awarded his costs and expenses of this litigation, including reasonable attorney's fees, and expert witness fees, and;

(7) That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

## VIOLATION OF FMLA

33. Plaintiff incorporates by reference herein Paragraphs 1 through 32 as though set forth in full.

34. The Family Medical Leave Act ("FMLA") entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave.

35. It also prohibits termination against those employees who utilize such leave for specified family and medical reasons.

36. Plaintiff is an eligible employee because she worked for a covered employer, worked 1,250 hours during the twelve (12) months prior to her termination, worked at a location where the employer has 50 or more employees within 75 miles, and worked for Defendant for twelve (12) months.

37. Defendant is a covered employer.

38. As an eligible employee, Plaintiff was entitled to twelve (12) workweeks of leave to care for her health conditions.

39. Defendant provided Plaintiff with leave under the FMLA, but Plaintiff suffered an adverse employment action at the hands of Defendant in that she was terminated from her position upon returning from taking advantage of the leave afforded her under the FMLA.

40. There is a causal connection between Plaintiff's termination and her need to engage in the protected rights to which she was entitled under the FMLA.

41. As a direct and proximate result of Plaintiff's discharge of employment, Plaintiff has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to reputation, and lost enjoyment of life, all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief:

(1) Award Plaintiff damages against Defendant in an amount equal to any wages, salary, employment benefits, and other compensation denied or lost to plaintiff by reason of the violation of the statute;

(2) Award Plaintiff interest on the amount of any wages, salary, employment benefits and other compensation denied or lost to Plaintiff by reason of the violation of the statute;

(3) Award Plaintiff such equitable relief as may be appropriate, including employment, reinstatement, and promotion;

(4) Award Plaintiff reasonable attorney's fees, reasonable expert witness fees, and other costs of this action;

(5) Grant Plaintiff such other and further relief as the Court deems appropriate under the circumstances.

    WARD & GLASS, L.L.P.

    s/Scott F. Brockman
Stanley M. Ward, OBA #9351
Woodrow K. Glass, OBA #15690
Scott F. Brockman, OBA #19416
R. Ben Houston, OBA #14751
Barrett T. Bowers, OBA #30493
1821 E. Imhoff Road, Suite 102
Norman, Oklahoma 73071
(405) 360-9700
(405) 360-7902 (fax)
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**